This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**NEW MEXICO ENVIRONMENT DEPARTMENT ENVIRONMENTAL PROTECTION DIVISION,**

Petitioner-Appellee,

**v.**                                                    **NO. 29,910**

**TOWN OF VAUGHN, NEW MEXICO,**

Respondent-Appellant.

**APPEAL FROM THE SECRETARY OF THE NEW MEXICO ENVIRONMENT DEPARTMENT**
**Felicia Orth, Hearing Officer**

New Mexico Environment Department
Misty M. Braswell, Office of the General Counsel
Santa Fe, NM

for Appellee

The Romero Law Firm, P.A.
David E. Romero, Jr.
Las Vegas, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Appellant-Respondent the Town of Vaughn (the Town) appeals from the final order issued by the Secretary of the Environment Department that, among other matters, upholds the administrative compliance order [RP 2-14] issued by the New Mexico Environment Department (NMED) for violations of the New Mexico Solid Waste Act, including imposition of the $214,100 civil penalty. [RP 134] Our notice proposed to affirm, and the Town filed a timely memorandum in opposition pursuant to a granted motion for extension of time. We remain unpersuaded by the Town's arguments, and therefore affirm.

Below, and on appeal, the Town does not dispute the underlying violations of the Solid Waste Act which form the basis for the administrative compliance order and the Secretary's order. Instead, the Town's arguments relate to the central defense that the case should have been dismissed because NMED failed to provide funding to the Town to pay for the cost of the compliance with the Solid Waste Act, NMSA 1978, §§ 74-9-1 to -43 (1990, amended through 2001). [DS 4; RP 41-43, 111, 127]

In support of its position, the Town refers [RP 41; DS 2; MIO 1; Transcript 163-64] to N.M. Const. art. X, § 8, which provides:

> A state rule or regulation mandating any county or city to engage in any new activity, to provide any new service or to increase any current level of activity or to provide any service beyond that required by existing law, shall not have the force of law, unless, or until, the state provides sufficient new funding or a means of new funding to the county or city to pay the cost of performing the mandated activity or service for

the period of time during which the activity or service is required to be performed.

As provided in our notice, this constitutional provision is inapplicable because NMED did not mandate the Town to operate a solid waste facility in the first instance, or to otherwise engage in any new services or to increase any current level of activity. [RP 72, 111-12] Rather, the Town itself elected to operate a solid waste facility. [RP 135] Once the Town elected to do so, it was required to comply with the Solid Waste Act to ensure that its operation did not harm the environment or endanger public health and safety. *See* § 74-9-31(A)(5). And any resultant costs of such required compliance stemmed from its own election to operate a landfill as opposed to any mandate by NMED to do so. In such instance, the Town's reliance on the constitutional provision is misguided.

In an effort to trigger application of the constitutional provision, the Town in its memorandum in opposition disputes our conclusion, as well as that of the hearing officer [RP 110, 112] and the Secretary [RP 135], that NMED did not mandate the Town to operate a solid waste facility in the first instance. [MIO 2, 4] Specifically, the Town asserts that "[t]here is no where in the [r]ecord [p]roper that a witness makes that kind of statement by the Hearing Officer and Secretary as conclusions to their findings." [MIO 2] To the extent that the record lacks evidence regarding whether the State required the Town to open a landfill, this reflects a failure by the Town to

3

develop its defense or present evidence on behalf of its position that the State failed to provide adequate funding to operate the landfill in compliance with the Solid Waste Act. Once NMED presented a prima facie case to support the Solid Waste Act violations as set forth in its administrative compliance order [RP 2], the Town had the burden to present any evidence in support of its defense relating to a lack of funding. In this regard, the Town failed to present any evidence below or on appeal in support of the position that NMED required it to operate that facility in the first instance so as to trigger application of N.M. Const. art. X, § 8. [RP 117; Transcript/117-18, 150] Similarly, although the Town suggests evidence should have been presented regarding when the landfill was opened and whether the requirements of the Solid Waste Act predated the opening of the landfill [MIO 5], these were also matters for the Town to establish as part of its defense. *See* 20.1.5.400(C) NMAC (11/2701) (stating that the "[c]omplainant has the burden of going forward with the evidence and of proving by a preponderance of the evidence the facts relied upon to show the violation occurred and that the proposed civil penalty is appropriate [and] [f]ollowing the establishment of a prima facie case, the Respondent shall have the burden of going forward with any adverse evidence or defense to the allegations"); *see also Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 580-81, 577 P.2d 885, 888-89 (Ct. App. 1978) (providing

4

that the defendant bears the burden of proof and production when claiming an affirmative defense).

Lastly, we do not agree that the statutory provisions of the Solid Waste Act required NMED to provide funding to the Town. [DS 3; MIO 5; RP 42, 132] We acknowledge that the director of the environmental improvement division is required to prepare and submit to the environmental improvement board for approval a solid waste management plan, *see* §§ 74-9-4, -7, and that such plan is to include a funding element that includes a projected cost of implementation of the plan and recommendations for developing revenue sources for plan implementation. [MIO 3] *See* § 74-9-6(G). But we do not agree that these requirements are such that NMED is the required source of such funding. [MIO 3] Rather, as noted above, the statutory provisions of the Solid Waste Act require that an entity who elects to operate a solid waste facility do so in a manner that does not harm the environment or endanger public health and safety. The director's role in developing a plan is to ensure that an entity complies with the Solid Waste Act, including meeting any necessary funding requirements. [RP 73]

**CONCLUSION**

Based on the foregoing discussion, we affirm.

**IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

7